UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMIRO DELGADO JUAREZ,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Case:    1:21-cv-00071-BLW<br>Criminal Case: 1:19-cr-00039-BLW-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Petitioner Ramiro Delgado Juarez's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Civ. Dkt. 1, Crim Dkt. 45). Juarez claims, among other things, ineffective assistance of counsel. The Court has determined that the evidence in the record is sufficient for a decision on this matter and that an evidentiary hearing is not necessary. For the reasons explained below, the Court will deny the motion. The Court also declines to issue a certificate of appealability.

## BACKGROUND

Juarez was indicted in February 2019 on one count of possession with intent to distribute 500 grams or more of methamphetamine (Crim. Dkt. 1). In October

2019, he pled guilty to this charge without a plea agreement. (Crim. Dkts. 19, 20, 21, 26.) Juarez was sentenced on May 27, 2020, to 210 months of imprisonment (Crim. Dkt. 37). He was also sentenced to 5 years of supervised release, a $100 special assessment, and a $1,000 fine. (*Id.*)

Juarez timely filed the currently pending Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Civ. Dkt. 1, Crim Dkt. 45.)

## STANDARD FOR § 2255 MOTIONS

Under 28 U.S.C. § 2255, there are four grounds on which a court may grant relief to a federal prisoner who challenges the imposition or length of his or her custody: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Juarez challenges his sentence under the first ground for relief, arguing that the sentence was imposed in violation of the Constitution.

A hearing on a § 2255 motion is not required when, as here, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## ANALYSIS

### A.    Ineffective Assistance of Counsel Claim

To establish ineffective assistance of counsel, Juarez must meet the two-part *Strickland* test, which requires that he show both (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that there is a "reasonable probability" that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Conclusory allegations are insufficient to state a claim of ineffective counsel. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

When evaluating the sufficiency of counsel's representation, a court's review is "highly deferential," and there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688, 689. This is because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. This *Strickland* standard is

"highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

If either element of the two-part *Strickland* test is missing, then a defendant has not met his or her burden. When assessing an ineffective assistance claim, there is no need to assess the elements of the *Strickland* test in a particular order, or to even address both elements of the test. *Strickland*, 466 U.S. at 697.

Here, Juarez claims that he received ineffective assistance of counsel because his guilty plea was not knowingly, intelligently, or voluntarily entered. Specifically, he contends that he was not properly advised of the full extent and nature of the charges and consequences of pleading guilty because there is not a signed guilty plea, and that his counsel got him to plead guilty by telling him that "he would get ten years minus 2-3 points for pleading guilty."  The transcript of the change of plea hearing and defense counsel's affidavit demonstrate that, contrary to Juarez's claim, his guilty plea was both knowing and voluntary.

The transcript reveals that Juarez was informed of his rights, the consequences of pleading guilty, and that his plea was knowing and voluntary. (Crim. Dkt. 46.) During the plea hearing, Juarez was informed of his rights and the consequences of pleading guilty, including that the minimum sentence for the charge against him was 10 years and that he could be sentenced to up to life imprisonment. (*Id.*) Juarez was asked if he had any question regarding his rights,

and he said, "no." (*Id.* at 8.) When asked if he understood these rights and the consequences of pleading guilty, Juarez responded, "yes." (*Id.* at 8-9.) When asked whether, having heard the discussion of his rights, he still wanted to go forward and enter a plea of guilty and give up those rights, Juarez said, "yes." (*Id.* at 9.)

The Government attorney laid out the elements of the offense of possession with intent to distribute methamphetamine and then proceeded to recite the following factual basis: "[B]etween the dates of January 28, 2019, and January 31, 2019, the defendant knowingly possessed 6,814 grams of actual methamphetamine in  Nampa, Idaho. The defendant possessed the methamphetamine with the intent to distribute it to others."  (*Id.* at 12-13.) ) After this recitation, Juarez stated that, "Yes," he had listened carefully to what the Government's attorney had stated, and "no," there was nothing that the Government attorney had stated that was incorrect. (*Id.* at 12-13.) When asked, "Do you agree that if your case were to go to trial, the Government would be able to prove each of the elements of the charge against you beyond a reasonable doubt?" Juarez answered, "Yes." When asked to describe in his own words what he did that makes him guilty of the charge against him, Juarez responded: "Well, yes, I recognize – I acknowledge it, because I had it in my hands and I had the intent of doing that, of distributing that." (*Id.* at 13-14.) When asked what he had in his hands, Juarez responded, "The methamphetamine." (*Id.* at 14.)

Finally, the following exchange occurred:

THE COURT: Okay. The Government alleges that between January 28th and January 31st of 2019, you were in possession of 6,814 grams of actual methamphetamine. Do you understand that allegation?

THE DEFENDANT: Yes.

THE COURT: And do you admit to that?

THE DEFENDANT: Yes.

THE COURT: The Government alleges that you were knowingly in possession of that methamphetamine; in other words, that you knew that what you had was methamphetamine. Do you understand that allegation?

THE DEFENDANT: Yes.

THE COURT: And do you admit to that?

THE DEFENDANT: Yes.

THE COURT: The Government alleges that you possessed this methamphetamine with the intent to distribute it to other persons. Do you understand that allegation?

THE DEFENDANT: Yes.

THE COURT: Do you admit to that?

THE DEFENDANT: Yes.

THE COURT: The Government alleges that you were in that knowing possession of methamphetamine with the intent to distribute it to others in Nampa, Idaho, at that time period. Do you understand that allegation?

THE DEFENDANT: Yes.

THE COURT: Do you admit to that?

THE DEFENDANT: Yes.

(*Id.* at 14-15.)

The Court then asked Juarez whether anyone had made any sort of promise or prediction as to the sentence he would receive, to which he said "no." (*Id.* at 15.) The Court explained the sentencing guidelines and how the guidelines are considered in deciding the sentence to be imposed, along with the impact his criminal history could have on his sentence and sentencing range. (*Id.* at 15-18.) Juarez indicated he understood all of this. (*Id.*) The Court also explained: "If the judge accepts your plea of guilty, you will not be allowed to withdraw that plea even if the judge imposes a [sentence] that is more severe [than] you think it will be at this time or more severe than the sentence called for by the sentencing guideline range." (*Id.* at 17-18.) When asked if he understood this, Juarez stated, "Yes." (*Id.* at 18.)

After confirming with defense counsel that he had discussed with Juarez all possible defenses that might exist to the charges, and that counsel was satisfied that a plea of guilty would be knowing and voluntary, the Court inquired of Juarez: "Mr. Juarez, what, then, is your plea to the charge contained in Count 1 of the indictment, that of possession with intent to distribute methamphetamine?" Juarez

responded, "Guilty." (*Id.* at 19.) The Court accepted Juarez's plea of guilty to possession of more than 500 grams of methamphetamine with intent to distribute, finding that it was knowingly and voluntarily made, and that there was a proper factual basis for the plea. (*Id.* at 19-20; Crim. Dkt. 26.)

The transcript of the plea hearing clearly establishes that Juarez's guilty plea was knowingly and voluntarily entered. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969)) ("A defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' ")(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Juarez also contends that counsel was ineffective by incorrectly predicting that Juarez would receive a ten year sentence less credit for acceptance of responsibility. This contention is contradicted by Defense counsel's affidavit stating that counsel correctly informed Juarez of the minimum sentence of ten years and the maximum sentence of life. (Civ. Dkt. 12-1.) However, even if defense counsel did erroneously predict the sentence, such an erroneous prediction would not render counsel's assistance ineffective. *See Iaea v. Sunn*, 800 F.2d 861,

865 (9th Cir. 1986) (mere inaccurate prediction of sentence, standing alone, would not constitute ineffective assistance). Defendant was also told, during the plea hearing, that the minimum sentence was 10 years, and that he could be sentenced to up to life imprisonment, and Juarez stated he understood.

Juarez appears to also contend that his counsel was ineffective for allowing him to enter a guilty plea without a plea agreement. Counsel's affidavit, however, explains that he discussed with Juarez the possibility of a plea agreement, but that Juarez rejected that possibility and was not willing to enter into a plea agreement or provide substantial assistance to the Government, in part due to concern about the safety of his family. (Civ. Dkt. 12-1.)

Finally, Juarez appears to contend that his counsel was ineffective in relation to Juarez's right to appeal. Juarez indicates that counsel was not present when Juarez signed a waiver of his appeal rights and that he (Juarez) was thus not informed of the right to counsel on direct appeal or the constitutional rights he would be waiving. However, during the sentencing hearing, Juarez was advised of his right to appeal and a notice of appeal was filed on his behalf by his counsel. Juarez was also represented by his counsel on that appeal. That Juarez subsequently signed a waiver of pursuing an appeal and, through counsel, voluntarily dismissed the appeal does not, without more, render counsel's

representation ineffective. Similarly, that counsel was apparently not personally present at the time Juarez signed the waiver does not, by itself, render counsel's representation ineffective. Further, Juarez does not raise any particular issue that he wished to pursue on appeal.

In sum, Juarez has not overcome the "strong presumption" that his counsel's representation "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, Juarez has failed to demonstrate that his counsel's representation constitutes ineffective assistance of counsel.

### B.    Factual Basis for Guilty Plea

Juarez contends that there is no factual basis on the record for his guilty plea. Specifically, he contends that he never admitted that he distributed drugs and that no drugs were found on him; that the car he was in when arrested was not his; and that there was no search warranted executed during which drugs were found at his home. He further contends that his rights were violated because there was no preliminary hearing and no signed plea agreement.

As to the factual basis, as set forth above, during the plea hearing Juarez admitted that between January 28, 2019, and January 31, 2019, he knowingly possessed 6,814 grams of actual methamphetamine in Nampa, Idaho, and that he possessed the methamphetamine with the intent to distribute it to others. (Crim. Dkt. 46 at 12-15.) Juarez's claim that there is not a factual basis for his guilty plea

is therefore entirely without merit and is rejected.

As to the lack of a preliminary hearing, the record demonstrates that Juarez was indicted by a grand jury. He therefore did not have a right to a preliminary hearing. *See* Fed. R. Crim. P. 5.1(a) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted. . . .").

Finally, that there was no plea agreement in this case does not implicate any constitutional right. Juarez may enter a guilty plea without a plea agreement and, further, a criminal defendant does not have a constitutional right to have a plea agreement.[1]

### C.      Denial of Counsel and Direct Appeal

As set forth above, a notice of appeal was filed on Juarez's behalf and he was represented by counsel on that appeal. Juarez ultimately agreed to dismiss that appeal and signed a waiver demonstrating that agreement. He does not deny these facts. Instead, he again asserts that his rights were violated because his counsel was not physically present when he signed the waiver and that he did not understand

---

[1] Juarez appears to also contend that there was an agreement that the Government violated. However, this contention is inconsistent with both the record and Juarez's contentions regarding the lack of a plea agreement.

the full nature or extent of the consequences of the waiver and agreement to dismiss the appeal.

Again, Juarez does not indicate any issue he wished to pursue on appeal. Further, to the extent he wished to claim on appeal that his guilty plea was not knowing and voluntary because counsel incorrectly predicted his sentence, such a claim would not have provided a basis for withdrawing his guilty plea. *See, e.g., United States v. Oliveros-Orosco*, 942 F.2d 644, 646 (9th Cir.1991). This is particularly true where, as here, a defendant is explicitly told during the plea hearing that his sentence would be a minimum of ten years and up to life. Moreover, Juarez denied during the plea hearing that anyone had made any sort of promise or prediction to him as to what sentence he would receive.

Based on the record before it, the Court cannot find that Juarez was denied counsel on appeal, nor that he was denied the right to a direct appeal.

### D.    Certificate of Appealability

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural

grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006). After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's decision to be debatable or wrong.

## ORDER

**IT IS ORDERED that:**

1.     Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Dkt. 1) is DENIED.

2.     No certificate of appealability shall issue. Petitioner is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

3.     If Petitioner files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: November 21, 2022

B. Lynn Winmill
U.S. District Court Judge